# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THEODUS LINDSAY, JR.,     )
                             )
     Petitioner,         )
                             )
     v.                )     1:15CV106
                             )
TOMMY CASTELLOE,        )
                             )
     Respondent,    )

## ORDER, MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the state of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) Respondent has filed an Answer (Docket Entry 4), a Motion for Summary Judgment (Docket Entry 5), and a Supporting Brief (Docket Entry 6). Petitioner filed a Response in Opposition to Defendant's Motion for Summary Judgment (Docket Entry 7) and Supporting Brief (Docket Entry 8). Also before the Court is Petitioner Motion for Appointment of Counsel. (Docket Entry 9.) This matter is now prepared for a ruling.

### Procedural Background

On May 10, 2012, in the Superior Court of Cabarrus County, Plaintiff was convicted after trial by jury of felonious breaking or entering, and assault with a deadly weapon with intent to kill inflicting serious injury. (Docket Entry 6-5, Ex. 4 at 5.) He was sentenced to 72-96 months imprisonment. (*Id.*) On April 16, 2013, the North Carolina Court of Appeals

1

("NCCOA") dismissed Petitioner's appeal in part and found no plain error in part. *State v. Lindsay*, No. COA12-1319, 2013 WL 1616101 (N.C. App. Apr. 16, 2013) (unpublished). On April 11, 2014, Petitioner filed a motion for appropriate relief ("MAR") through counsel in the Superior Court of Cabarrus County. (Docket Entry 6-2, Att. C at 36-50.) An evidentiary hearing on October 1, 2014 was held before the Honorable W. Erwin Spainhour. (Docket Entry 6-9, Ex. 7.) On November 13, 2014, Judge Spainhour denied the MAR on the merits. (Docket Entry 1-1, Ex. 1 at 1-4.) On January 28, 2015, Petitioner filed a certiorari petition in the NCCOA which was denied on February 15, 2015. (Docket Entry 6-2, Ex. 1 at 2-15; Docket Entry 6-11, Ex. 9.) Lastly, Petitioner submitted the instant petition on January 29, 2015. (Docket Entry 1.)

## Factual Background

The NCCOA summarized the facts from Petitioner's case as follows:

The evidence presented at trial tended to show the following. Defendant and Karen Lindsay ("Ms. Lindsay") were married in 1994. Defendant was employed by the postal service and had served in the U.S. Army. Ms. Lindsay worked at Pass & Seymour Electrical Wiring Devices and Supplies with Elliot Hunt ("Mr. Hunt"). Defendant and Ms. Lindsay eventually separated, and on 21 August 2009 Ms. Lindsay moved out of the marital home. Ms. Lindsay moved into a house near Mr. Hunt's residence.

In September 2009, Ms. Lindsay and Mr. Hunt engaged in a sexual relationship. After her home was burglarized, Ms. Lindsay began staying some nights at Mr. Hunt's home. During this time, Defendant hoped to save his marriage and reconcile with Ms. Lindsay. On the morning of 7 October 2009, Defendant and Ms. Lindsay discussed taking a trip to Las Vegas together. Ms. Lindsay told Defendant that she would need time to think about it and agreed to have lunch with Defendant later in the week.

On the afternoon of 7 October 2009, Ms. Lindsay and Mr. Hunt were at Mr. Hunt's residence. Mr. Hunt heard a sound and went to the front room of the house, where he found Defendant standing in the living room. Once inside,

2

Defendant asked to speak with Ms. Lindsay. Ms. Lindsay heard the sound of her husband's voice and walked into the living room.

Mr. Hunt testified that he decided to leave the room to allow Defendant and Ms. Lindsay an opportunity to speak, but before he could leave, Defendant attacked him with a sharp object. Mr. Hunt testified the men struggled and fought, ultimately ending up on the floor. The fight lasted approximately thirty seconds before Defendant ran out the door.

Defendant testified that he did not attack Mr. Hunt, but rather that Mr. Hunt began the fight by walking up to Defendant and punching him. Defendant claimed that he fell back and grabbed a nearby knife in the living room. Fearing for his life, Defendant swung the knife at Mr. Hunt to create space between the two men in order to escape.

A neighbor heard the altercation and called the police. After the fight, Mr. Hunt was taken to the emergency room where he was treated for lacerations across the left side of his face, ear, chest, and abdomen. Later that evening, Defendant was arrested for breaking or entering, assault with a deadly weapon with the intent to kill inflicting serious injury, and maiming. Defendant was indicted for these offenses on 2 November 2009.

On 10 May 2012, Defendant was found guilty of breaking or entering and assault with a deadly weapon with the intent to kill inflicting serious injury, and was sentenced to 72–96 months imprisonment.

*Lindsay*, 2013 WL 1616101, at *1-2 (footnote omitted).

## Petitioner's Claims

Petitioner's sole issue before the Court is whether defense counsel was ineffective by informing the jury that Petitioner, upon advice of counsel, invoked his Fifth Amendment right to remain silent. (Docket Entry 1, §12; Docket Entry 8 at 1-5.)[1]

---

[1] Petitioner claims that he received ineffective assistance of counsel from his trial and appellate counsel. (Docket Entry 1, §11.) However, Petitioner does not allege what appellate counsel did or did not do that constituted ineffective assistance. (*Id.*)

3

## Standard of Review

Where a state trial court adjudicated a petitioner's claims on their merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. *Id.* at 181-82. A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. "Unreasonable" does not mean just "incorrect" or "erroneous" and the court must judge the reasonableness from an objective standpoint. *Id.* at 409-12. State court factual findings are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This standard applies below.

## Discussion

Petitioner's only argument is that his trial attorney was ineffective because he informed the jury that Petitioner invoked his right to remain silent. (Docket Entry 1, §12; Docket Entry 8 at 1-5.) Petitioner states, in his Petition, that during the "cross-examination of [the]

4

investigating officer, counsel asked officer, 'on advice of counsel, [whether Petitioner did or] .

. . did not make any statement [the] evening [he was interrogated].' Officer responded that

after consulting with counsel, defendant did not make a statement." (Docket Entry 1, §12.)

At trial, the specific questioning by Petitioner's attorney of State's witness, Detective Kevin

Pfister was as follows:

> Q    And there at the sheriff's department, someone advised him of
>      his rights, to make a statement or not; is that correct?
> A    When he got there, we'd asked him if he wanted to speak with us
>      and he said he preferred to talk to an attorney. And we inquired
>      if he had an attorney and he said yes. And we asked if he'd like
>      for us to call them and he gave us the name; and we, in turn,
>      called the attorney for him. Yes, sir.
> Q    And then on advice of counsel, Mr. Lindsay did not make any
>      statement that evening?
> A    Correct. We had provided him and his attorney a conference
>      room to speak with each other and then the attorney came out
>      and said he didn't wish to speak with us at that time.

(Docket Entry 6-7, Ex. 5 at 162-163). Petitioner testified during his case-in-chief. On

cross-examination, the prosecutor asked the following questions relating to Petitioner's

decision not to talk to the police:

> Q    You said that you only – you never talked to the police.
> A    I went down—I turned myself in so, yes, ma'am, I talked to the
>      police.
> Q    What defense counsel brought out through Detective Pfister was
>      they wanted to talk to you, but you didn't talk to them.
> A    I have the right to remain silent.
> Q    I'm just –
> A    And I chose to remain silent. I was under stress. I was under
>      depression. I –
>      MR. RUSSELL: Objection, Your Honor. He doesn't have to
>      explain that.
>      MR. MCNAIRY: I didn't ask him to explain it. I just asked him
>      the question.
>      No further questions.
>      MR. RUSSELL: No other questions, Your Honor.

THE COURT: All right. Step down.

(*Id.* at 217-218.)

Petitioner sole argument is that his attorney should not have informed the jury (through his questioning of the State's witness) that Petitioner exercised his right to remain silent.[2] Petitioner's claim fails. To prove ineffective assistance of counsel generally, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he suffered prejudice as result. *See Strickland v. Washington*, 466 U.S. 668, 667-696 (1984). Unsupported, conclusory allegations do not entitle a petitioner to relief. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *abrog'n on other grounds recog'd, Yeatts v. Angelone,* 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). Prejudice requires a showing of a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have differed. *Strickland*, 466 U.S. at 694. The *Strickland* standard described above also applies to claims that appellate counsel was ineffective. *See Lawrence v. Branker,* 517 F.3d 700, 708-09 (4th Cir. 2008).

Applying the two-prong test, the MAR court found that Petitioner had not met his burden. The MAR court did find that "[t]he decision to elicit the testimony [concerning Petitioner's decision to exercise his right to remain silent] was without the prior knowledge or consent of the defendant" and that "[t]here was no reasonable basis or explanation for defense counsel to ask the questions [concerning Petitioner's decision to exercise his right to remain

---

[2] Petitioner does not challenge the prosecutor's cross-examination of Petitioner on this point as being error.

6

silent]." (Docket Entry 1-1 at 2.) While, at most, the MAR court's finding may raise questions as to whether counsel performance "fell below a reasonable standard for defense attorneys," *Strickland*, 466 U.S. at 667-688, what is abundantly clear is that Petitioner has failed to show that prejudice resulted from any deficient performance. *Id.* at 692-94. The MAR Court stated:

> Defense counsel's error in eliciting the questions [concerning Petitioner's decision to exercise his right to remain silent] was harmless beyond a reasonable doubt because of the overwhelming evidence against the defendant. The defendant cut the victim 10 or 11 times on the victim's neck, ear, shoulder, and side, under his arm, across his chest. The ear was left in two or three pieces prior to plastic surgery. Another wound ran from the victim's ear to his mouth as having been cut completely through, causing the victim to almost choke from blood, and making it difficult for him to form words while being treated. The wounds were potentially life threatening. A neighbor saw the defendant enter the home where the assault occurred, and she saw him leave after the assault. Boots were found at the defendant's home that were positive for the human blood. The defendant testified at trial that he did enter the home in question, and that the victim "beat the crap" out of the defendant; that he fell back on a chair and then used a knife to swing at the victim. Photographs of the defendant after the altercation showed only a small scratch or two on his back and a small abrasion on his lip, and there was no other injury. The defendant admitted causing the injuries to the victim. Identification was not an issue.

(Docket Entry 1-1 at 2-3.) The MAR Court ultimately concluded as a matter of law the following:

> 1. Defense counsel's error in asking the questions . . . was harmless beyond a reasonable doubt, and the error was not prejudicial to the defense. The error was not so serious as to deprive the defendant of a fair trial. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).

> 2. There is no reasonable probability that, but for the error, the result of the trial before the jury would have been different. <u>State v. Braswell</u>, 312 N.C. 553 (1985).

> 3. In light of the overwhelming evidence of the defendant's guilt, the defendant cannot show that there is a reasonable probability that the outcome of the trial would have been different if the foregoing questions had not been asked. <u>State v. Braxton</u>, 352 N .C. 158 (2000), *cert. Denied,* 121 S. Ct. 890 (2001); <u>State v. Ellis,</u> 130 N.C. App. 596, 599 (1988).

4. All constitutional errors do not require reversal. Instead, a general rule, such errors should be evaluated against a harmless error standard. Under that standard, the error will require reversal unless the court is convinced beyond a reasonable doubt that it did not contribute to the verdict obtained-as in the case sub judice. <u>Chapman v. California</u>, 386 U.S. 18 (1967); <u>United States v. Hastings</u>, 461 U.S. 499 (1983); <u>Neder v. United States</u>, 527 U.S. 1, 18 (1999).

(*Id.* at 3.)

Giving deference to the State court's determinations, the MAR Court's findings of fact and conclusions of law were not unreasonable. *Fowler v. Joyner*, 753 F.3d 446, 457 (4th Cir. 2014) *cert. denied,* —— U.S. ——, 13 S. Ct. 1530, 191 L. Ed. 2d 562 (2015). As stated above, there was overwhelming evidence of Petitioner's guilt, such that this Court cannot conclude that but for any error on the part of Petitioner's trial counsel, the results would have been different here. *Strickland*, 466 U.S. at 692-694. "In conducting federal habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treatises of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991) (citations omitted). "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960). Such circumstances are absent here. The resolution of this matter by the State is neither contrary to, nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts.

Petitioner cites *Doyle v. Ohio,* 426 U.S. 610 (1976), to support his argument. (Docket Entry 6-5.) However, that case is distinguishable from the instant case. In *Doyle,* the prosecutor sought to impeach the defendants on cross-examination by using their silence after they had been arrested and given their Miranda warnings. *Doyle,* 426 at 613-16. Here, it was

8

Petitioner's *own* attorney that brought before the jury the fact of Petitioner's decision to exercise his right to remain silent.

Indeed, at the MAR hearing, Petitioner's counsel testified that the reason for asking this line of questioning to Detective Pfister was strategic trial planning.[3] (Docket Entry 6-9, Ex. 7 at 28-31.) Even a conclusion that defense counsel's questions and the follow-up questioning by the prosecutor was error, such error was harmless. The Fourth Circuit has recognized the harmless error standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). "Under that standard, an error is harmless unless it had a substantial and injurious effect or influence in determining the jury's verdict." *Fowler v. Joyner*, 753 F.3d at 459 (citation and quotations omitted). Applying the *Brecht* standard, under the facts of this case, specifically taking into account the overwhelming evidence against Petitioner of his assault with a deadly weapon with intent to kill inflicting serious bodily injury and breaking or entering charges, any such error by defense counsel was harmless. *Golphin v. Branker*, 519 F.3d 168, 191 (4th Cir. 2008) (finding, based upon overwhelming evidence, that it is highly unlikely "that the jury would have declined to convict [defendant] of first-degree murder absent" any potential error in admitting his confession); *Ward v. French*, 165 F.3d 22, *5 n.5 (4th Cir. 1998) (table) ("The evidence of [defendant's] guilt . . . simply was overwhelming."). The highly differential

---

[3] A trial counsel's strategy and tactics carry a presumption of reasonableness as to performance under the first prong of *Strickland. See United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004) (citing *Strickland*, 466 U.S. at 689) ("Under the first prong of *Strickland,* we apply a 'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"); *see also Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009) ("Although ultimately unsuccessful, defense counsel's strategy, including raising the matter of [defendant's] silence, was not constitutionally deficient."). Even if this Court were to find that the MAR court unreasonably concluded that defense counsel erred, the ultimate finding of harmless error should not be disturbed.

9

standards of *Strickland* and §2254(d), and the decision by the MAR reviewing court is a high bar which Petitioner has failed to overcome. Thus, Respondent's motion should be granted.

## Motion for Appointment of Counsel

Petitioner has also filed a Motion for the Appointment of counsel. (Docket Entry 11.) In view of the undersigned's Recommendation and the absence of exceptional circumstances warranting appointment of counsel, no basis exists to grant this motion. Consequently, this motion is denied. *See Whisenant v. Yuam*, 739 F.2d 160, 165 (4th Cir. 1984), *abrogated in part on other grounds*, *Mallard v. United States Dist. Ct. for S.D. Iowa*, 490 U.S. 296 (1989).

## Conclusion

Petitioner's habeas claim lacks merit. Petitioner has failed to demonstrate that the state's resolution of his claim was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. An evidentiary hearing is not warranted in this matter.

**IT IS THEREFORE ORDERED** that Petitioner's Motion for the Appointment of Counsel (Docket Entry 9) be **DENIED**.

**IT IS THEREFORE RECOMMENDED** that Respondents Motion for Summary Judgment (Docket Entry 5) be **GRANTED,** that the Petition (Docket Entry 1) be **DISMISSED,** and that Judgment be entered dismissing this action.

Joe L. Webster<br>
United States Magistrate Judge

March 9, 2016
Durham, North Carolina